**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN THE MATTER OF | No. CV11-0004-PHX-DGC |
| Double G Arrowhead Orchards Limited Partnership, | BK No. 2:10-bk-20370 EWH |
| Debtor | |
| VCC Healthcare Fund, LLC, | **ORDER** |
| Appellant | |
| vs. | |
| Double G Arrowhead Orchards Limited Partnership, | |
| Appellee. | |

This is an appeal from the December 13, 2010 order of the Bankruptcy Court denying one of Appellant's claims as an unenforceable penalty (Doc. 9 at 15-16). The matter has been fully briefed (Doc. 8, 10, 12), and the parties do not request oral argument. For reasons that follow, the Court will vacate the judgment below and remand for further proceedings.

**A.　Background.**

The key facts relied on by both sides do not appear to be in dispute. *Compare* Doc. 8 at 5-7 *with* Doc. 10 at 5-8. Double G Arrowhead Orchards Limited Partnership ("Arrowhead") borrowed $19 million on a ten-year commercial note, secured by commercial property located in Glendale, Arizona. The property is Arrowhead's sole substantial asset. VCC Healthcare Fund, LLC ("VCC") now owns the lender's rights to the note. The note contains a provision to which the Court will refer as the "Prepayment Clause."

The Prepayment Clause reads in part as follows:

> <u>Prepayment Consideration.</u>  Lender shall not be obligated to accept any prepayment of the principal balance of this Note unless it is accompanied by all Prepayment Consideration due in connection therewith. . . .  The '<u>Prepayment Consideration</u>' shall be computed as follows: . . . August 1, 2010 through May 31, 2017: The greater of: (i) one percent (1%) of the outstanding principal balance of this Note at the time of prepayment; or (ii) the Yield Maintenance Amount (hereinafter defined).

Doc. 9 at 5(c) (emphasis in original).  The calculation of the "Yield Maintenance Amount" ("YMA") is not relevant to the inquiry here because Arrowhead does dispute the accuracy of the calculation.  For purposes of this order, it suffices that the YMA is a derivative of the yield rate of U.S. Treasuries and that the $4,576,429.44 payment in this dispute represents the YMA rather than the 1%-of-outstanding-principal figure.

Arrowhead defaulted on the note, VCC accelerated the note and initiated foreclosure, and Arrowhead filed for Chapter 11 bankruptcy.  VCC filed claims in the Bankruptcy Court asking for $17,937,304 in principal repayment and approximately $356,748 in accrued interest and late fees.  When Arrowhead filed a motion seeking permission to auction the property securing the note and to use the proceeds to pay claims of VCC and other creditors, VCC took the position that auctioning the property would trigger the Prepayment Clause and require an additional payment to VCC of $4,576,429.44.  Arrowhead objected, and the Bankruptcy Court held that VCC's recovery would be limited to VCC's actual damages because the Prepayment Clause is an "unenforceable penalty" under Arizona law.  Doc. 9 at 15:18.[1]

---

[1] VCC seems to have asserted in the Bankruptcy Court that the Prepayment Clause applies in this case because it has not been triggered by default (the note states that prepayment may not occur if the borrower is in default, Doc. 9 at ¶ 5(a)), and because the proposed sale of collateral in the Bankruptcy Court would be tantamount to prepayment of the loan.  The Bankruptcy Court did not address these issues, and they are largely unaddressed in the parties' briefing.  As a result, the Court will not discuss them on appeal.  The Court will limit its ruling to the issue decided by the Bankruptcy Court – whether the Prepayment Clause constitutes an unenforceable penalty.

VCC argues that the Bankruptcy Court erred as a matter of law in finding that (1) the Prepayment Clause was a liquidated damages provision, and (2) the Prepayment Clause was unenforceable as a penalty. Doc. 8. Arrowhead responds that both findings were correct as a matter of law.[2] Doc. 10.

**B.     Discussion.**

On appeal, a federal district court reviews issues of law from a bankruptcy court *de novo* and factual findings for clear error. *In re Strand*, 375 F.3d 854, 857 (9th Cir. 2004). The court below applied Arizona law (Doc. 11 at 69), and the parties do not appear to dispute that Arizona law controls.

Under Arizona law, an agreement to pay a specific amount of money in the event of a breach constitutes an unenforceable penalty unless (1) the harm caused by any breach is incapable or very difficult of accurate estimation, and (2) the amount is a reasonable forecast of just compensation for the harm caused by the breach. *Larson-Hegstrom & Assoc's, Inc. v. Jeffries*, 701 P.2d 587, 591 (Ariz. App. 1985); *accord Pima Sav. and Loan Ass'n v. Rampello*, 812 P.2d 1115, 1118 (Ariz. App. 1991). These determinations must be made as of the time the contract was made, not with hindsight. *Rampello*, 812 P.2d at 1118 ("[T]he question is whether the stipulated amount was, when all the facts are considered, reasonable at the time of the contract and not whether it was reasonable with the benefit of hindsight.").

The Bankruptcy Court based its holding on the finding that "the YMA, which is 25% of VCC's principal balance, was not a reasonable forecast of compensation for breach at the time the loan was made." Doc. 9 at 16:1-2. The Court does not agree.

The Bankruptcy Court did not address whether the harm caused by any breach of the note in this case was, at the time of contracting, incapable or very difficult of accurate estimation. This requirement of Arizona law clearly is satisfied. When the lender and Arrowhead entered into this loan, the harm caused by Arrowhead's possible future breach

---

[2] Arrowhead also suggests the Prepayment Clause applies only when the borrower is not in default, and asserts that it was in default here. Doc. 10 at 6-7. Because the Bankruptcy Court did not reach this issue, the Court will not address it.

could not be calculated with any accuracy. The commercial loan was to be repaid over ten years. The parties to the loan did not know when a breach might occur, what amount of principal and interest would have been repaid at that time, what ability Arrowhead might have to make additional partial repayment of the loan, what commercial interest rates would prevail at the time of breach, or what conditions might exist in the commercial real estate market to affect the value of the loan's collateral. As a result, it would have been impossible for them to calculate in advance what damages the lender might suffer from a breach.

Because this prong of the Arizona test is satisfied, the key question is whether the Bankruptcy Court correctly determined that the amount fixed in the contract was not a reasonable forecast of just compensation for the harm caused by a possible breach. The Bankruptcy Court did not make specific findings as to what a reasonable forecast of compensation would have been at the time the loan was made. The court also did not state why it considered the YMA formula unreasonable, other than to note that the YMA in this case constitutes 25% of the principal balance. But the mere fact that a payment represents 25% of the principal does not necessarily make the payment a penalty under Arizona law. The key inquiry is the reasonableness of the payment "in light of all the facts and circumstances in any given case." *See Jeffries*, 701 P.2d at 591; *see also Rampello*, 812 P.2d at 1118. "[T]he amount fixed is reasonable to the extent that it approximates the loss anticipated at the time of the making of the contract, even though it may not approximate the actual loss." *Rampello*, 812 P.2d at 1118.

The YMA calculation appears to be a reasonable approximation of the loss the lender would suffer if the loan was prepaid. YMA is defined in the note as "the present value, as of the Prepayment Date, of the remaining scheduled payments of principal and interest from the Payment Date through the Maturity Date," determined by discounting such payments by the Treasury rate. Doc. 8 ¶ 5(d). In other words, the YMA seeks to give the lender the benefit of the bargain under the note – the present value of the principal and interest it would have received had the loan been repaid over its ten-year life.

Arrowhead offers two reasons why the Prepayment Clause is not a reasonable estimate of just compensation: (1) the Prepayment Clause presumes that damages will be sustained even if interest rates change in favor of the lender by virtue of the 1%-of-principal provision; and (2) the Treasury rate used in the YMA formula is systematically lower than interest rates for commercial mortgages, thereby resulting in a windfall to the lender. Doc. 10 at 13-17.

The Court cannot conclude that the Prepayment Clause is unreasonable because it includes a minimum payment of 1% of the loan amount. First, the minimum 1% payment is not at issue here. Interest rates have dropped since the loan was made, and the prepayment premium in this case therefore is calculated using the alternative YMA formula. Second, requiring a 1% prepayment premium even when interest rates have risen is not necessarily unreasonable because a lender incurs costs when it is required by early payment of the note to reinvest its fund in the market – costs anticipated by the 1% prepayment requirement. Arrowhead has presented no evidence to show that the 1% prepayment requirement is not a reasonable estimation of such costs.

Nor can the Court conclude that the YMA is unreasonable because it uses Treasury rates. The sophisticated parties to this commercial loan not only concluded that Treasury rates would constitute a just basis for calculating approximate damages from a breach, they also specifically agreed that the Prepayment Clause "is a bargained for consideration and not a penalty." Doc. 9 at ¶ 5(c). Moreover, although it is true that Treasury rates generally are lower than commercial real estate loan rates, and that the use of Treasury rates to calculate YMA might therefore overstate to some extent the amount of loss the lender would incur when it was required to reinvest its funds in a lower market after early payment of the loan, the fact also remains, as noted above, that the lender would incur additional costs in any such reinvestment. *See In re Fin. Ctr. Assocs. of E. Meadow, L.P.*, 140 B.R. 829, 836-37 (Bankr. E.D.N.Y. 1992). Arrowhead has provided no evidence from which the Court can conclude that such costs are not reasonably approximated by the difference between prevailing commercial rates and Treasury rates. *See In re Hidden Lake Ltd. P'ship*, 247 B.R. 722, 729

(Bankr. S.D. Ohio 2000) ("The more commonly expected breaches . . . produce a situation where loss to the lender would be hard to estimate at the time the loan is closed because of the inability to predict future interest rates and the uncertainty of the availability of a suitable substitute investment opportunity for the lender. *Use of the Treasury obligation as a reference point for the calculation, although generally overcompensating Aetna, is not an unreasonable estimate*." (emphasis added)). Indeed, Arrowhead has provided no calculation of projected damages when the loan was made from which the Court could conclude that the YMA does not constitute a reasonable approximation of those damages. As a result, the Court cannot conclude that YMA failed, at the time of contracting, to provide a reasonable forecast of just compensation for the harm caused by a breach.

Applying *de novo* review, the Court concludes that under Arizona law (1) the harm caused by any breach of the note was, at the time of contracting, incapable or very difficult of accurate estimation, and (2) Arrowhead has not shown that the Prepayment Clause failed, at the time of contracting, to provide a reasonable forecast of just compensation for the harm caused by any future breach. *Larson-Hegstrom*, 701 P.2d at 591. Arrowhead therefore has failed to show that the Prepayment Clause is an unenforceable penalty under Arizona law.

**IT IS ORDERED:**

1. The judgment below is vacated.
2. The Clerk shall remand the case to the Bankruptcy Court for further proceedings.

DATED this 20th day of July, 2011.

_____
David G. Campbell
United States District Judge